IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) | Bankr. Case No. 16-11200-KG |
| DEX MEDIA, INC., *et al.*, | ) | (Jointly Administered) |
|  | ) |  |
| Debtors. | ) |  |
|  | ) | Adv. No. 16-51026 (KG) |
| _____ | ) |  |
|  | ) |  |
| YELLOW PAGES PHOTOS, INC., | ) | C.A. No. 17-96-MN |
|  | ) | C.A. No. 17-265-MN |
| Appellant, | ) | C.A. No. 18-197-MN |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| DEX MEDIA, INC., | ) |  |
|  | ) |  |
| Appellee. | ) |  |

## **MEMORANDUM OPINION**

Kathleen M. Miller, Smith, Katzenstein & Jenkins LLP, Wilmington, Delaware.  Richard E. Fee, Kathleen M. Wade, Fee & Jeffries, P.A., Tampa, Florida.  *Counsel for Appellant.*

Patrick A. Jackson, Drinker Biddle & Reath, LLP, Wilmington, Delaware.  Eric F. Leon, Kuan Huang, Latham & Watkins LLP, New York, New York.  *Counsel for Appellee.*

August 26, 2020
Wilmington, Delaware



**NOREIKA, U.S. DISTRICT JUDGE:**

Appellant Yellow Pages Photos, Inc. ("YPPI") appealed from several decisions entered in the adversarial proceeding against Appellee Dex Media, Inc. and certain affiliated entities (collectively, "Dex Media") in the U.S. Bankruptcy Court for the District of Delaware.  This Court issued its November 28, 2018 Memorandum Order affirming the Bankruptcy Court's decisions. *In re Dex Media, Inc.* (*Dex Media II*), 595 B.R. 19 (D. Del. 2018).  Having prevailed against YPPI on appeal, Dex Media filed a motion for attorneys' fees and costs pursuant to 17 U.S.C. § 505. For the reasons set forth below, Dex Media's Motion for Attorneys' Fees and Costs is GRANTED.

## I.     BACKGROUND[1]

This Court previously detailed the extensive litigation history between the parties in its November 28, 2018 Memorandum Order affirming the Bankruptcy Court's decisions.  *Dex Media II*, 595 B.R. at 25–33.  The factual and procedural history relevant to this Motion for Attorneys' Fees and Costs follows.

### A.     Factual Background

Verizon Directories Corp. ("Verizon Directories"), through its publishing arm SuperMedia, publishes yellow pages directories and provides print, mobile, and Internet advertising to small- and medium-sized businesses.  (DEX 560 ¶ 10).  On November 12, 2001, Verizon Directories entered an agreement to license 5,000 stock photographs ("the Licensed Images") from a Florida company, Yellow Pages Photos, Inc. ("Old YPPI"), wholly owned and

---

[1]     The docket of the adversary proceeding, captioned *Yellow Pages Photos, Inc. v. Dex Media, Inc.*, Adv. No. 16-51026-KG (Bankr. D. Del.), is cited herein as "Adv. D.I. __." The docket of the appeal, captioned and consolidated as *In re Dex Media, Inc.*, C.A. No. 17-265-MN (D. Del.), is cited herein as "D.I. __."  Appendices referenced in Section I of this Memorandum Opinion are docketed in C.A. No. 17-265-MN and are cited as follows: YPPI's appendix (D.I. 13–16) as "YPPI Appx. __"; Dex Media's appendix (D.I. 19-1) as "DEX __."

operated by Trent Moore ("Moore").   (DEX 560–61 ¶¶ 11–12).   Under this agreement ("the License"), Verizon Directories was prohibited from transferring the Licensed Images to unauthorized parties or individuals.  (DEX 590).

In November 2006, Moore created yet another Florida company called Yellow Pages Photos, Inc. (the current appellant, YPPI) and changed the name of Old YPPI to AdMedia Systems, Inc. ("AdMedia").  (DEX 561 ¶ 13).  Moore then assigned the License from AdMedia to appellant YPPI.  (*Id.*; DEX 505–506).  Also in November 2006, Verizon Directories spun off its publishing business into a public company, Idearc Media Corp. ("Idearc"), which succeeded to Verizon Directories' rights under the License.  (DEX 561 ¶ 14).

On March 31, 2009, Idearc filed for bankruptcy in the U.S. Bankruptcy Court for the Northern District of Texas ("the Idearc Bankruptcy").  (DEX 562 ¶ 16); *In re Idearc Inc.*, 423 B.R. 138 (Bankr. N.D. Tex. 2009).  On December 22, 2009, Idearc emerged from bankruptcy as SuperMedia LLC ("SuperMedia"), which succeeded to the rights under the License.  (*Id.* ¶ 17).

On March 18, 2013, SuperMedia's parent company, SuperMedia, Inc., commenced bankruptcy proceedings in the U.S. Bankruptcy Court for the District of Delaware before The Honorable Kevin Gross.  (DEX 563 ¶ 21).  As a result of the proceeding, on April 30, 2013, SuperMedia, Inc. merged with Dex One Corporation to become Dex Media.  (*Id.*).  Thus, SuperMedia became an indirect, wholly owned subsidiary of Dex Media.  (*Id.*).

### B.      SuperMedia Litigation

On May 30, 2013, YPPI sued SuperMedia, alleging breach of the License and copyright infringement ("the SuperMedia Litigation").  YPPI claimed that SuperMedia violated the License both before filing for bankruptcy ("the Prepetition Claim") and during the pendency of its bankruptcy proceeding ("the Administrative Expense Claim").  (YPPI Appx. 45–46).  YPPI's theory of liability for both claims was that the License was valid and enforceable, and that

SuperMedia breached the License by transferring Licensed Images to unauthorized third parties. (*Id.* ¶¶ 15, 19).  These third parties included Dex Media.  (DEX 60; DEX 117–19).

### 1.    Administrative Expense Claim

When litigating the Administrative Expense Claim, YPPI filed a Motion to Compel Assumption or Rejection of Executory Contract.  (DEX 1–8).  The Bankruptcy Court denied this Motion because the License was not an executory contract.  *In re SuperMedia, Inc.*, Case No. 13-10545(KG) (Jointly Administered), 2013 WL 5567838, at *4 (Bankr. D. Del. Oct. 9, 2013).  YPPI moved for reconsideration of its motion.   (DEX 28–39).   The Bankruptcy Court denied reconsideration, reiterating that "the License is not an executory agreement."  (DEX 41).

During a bench trial, the Bankruptcy Court found that impermissible transfers occurred in the prepetition period, but not in the administrative expense period, and thus denied the Administrative Expense Claim.   *In re SuperMedia, Inc.*, Case No. 13-10546(KG) (Jointly Administered), 2014 WL 7403448 at *13 (Bankr. D. Del. Dec. 29, 2014).  YPPI moved for reconsideration of this denial, arguing that SuperMedia's transfer of Licensed Images to Dex Media constituted breach.  (DEX 221 ¶¶ 10, 13).  The Bankruptcy Court denied the motion for reconsideration because any transfer from SuperMedia to Dex Media resulted from the merger of SuperMedia, Inc. and Dex One, not a deliberate physical transfer.  (DEX 224–25).

### 2.    Prepetition Claim

On October 23, 2015, shortly before trial began on the Prepetition Claim, YPPI filed an amended Proof of Claim, raising a new "failure to assume" theory of liability.  (DEX 306–36). Although YPPI continued to allege that the License was valid and enforceable and that SuperMedia had breached its transfer restriction, YPPI now pleaded, in the alternative, that the License was invalid and unenforceable because Idearc had not properly assumed the License during the Idearc Bankruptcy in 2009.  (DEX 314 ¶¶ 17–18).  Under the "failure to assume" theory,

any use or transfer of Licensed Images by SuperMedia, at any time, would have violated the License.  (DEX 316 ¶ 26).  Before the November 2015 trial, YPPI dropped its "failure to assume" theory.

During trial, YPPI introduced into evidence hundreds of print advertisements published by Dex Media and containing Licensed Images.  (DEX 386–412 at 164:17–190:1).  YPPI introduced the advertisements as evidence of the value of the Licensed Images for calculation of damages. (DEX 167:9–16).  It repeatedly conceded that the print advertisements were not an infringing use. (DEX 381 at 62:21–23; DEX 408 at 186:22; DEX 415 at 269:7–17).

On April 4, 2016, the Bankruptcy Court handed down its final decision on the merits, awarding YPPI $303,210 in actual damages for SuperMedia's violations of the License transfer restriction.  *In re SuperMedia LLC*, Case No. 13-10546(KG), Adv. Proc. No. 15-50044(KG), 2016 WL 1367070, at *9 (Bankr. D. Del. Apr. 4, 2016).  SuperMedia has paid the judgment in full.

### C.    Dex Media Litigation

On April 29, 2016, YPPI sued SuperMedia's parent, Dex Media, in the U.S. District Court for the Middle District of Florida, alleging that Dex Media infringed YPPI's copyright on the Licensed Images ("the Dex Media Litigation").  On July 8, 2016, Dex Media filed an Adversary Complaint in its pending Chapter 11 case before Judge Gross.  (YPPI Appx. 1–86).  Given the extensive overlap with the SuperMedia Litigation, the Bankruptcy Court agreed to exercise jurisdiction over the Adversary Complaint.

On September 30, 2016, YPPI filed its Answer and Counterclaims.  In its Counterclaims, YPPI took positions inconsistent with its arguments in the SuperMedia Litigation.  First, YPPI premised its claims on the "failure to assume" theory, contradicting its theory in the SuperMedia Litigation that the License was valid and enforceable.  (YPPI Appx. 107–109 ¶¶ 36–45).  Second, YPPI alleged that the License was an executory contract, (YPPI Appx. 105–106 ¶¶ 30–32), even

4

after the parties performed all obligations under the License by 2005. Third, YPPI asserted that, due to Idearc's failure to assume the License in its bankruptcy, SuperMedia had no rights under the License after December 30, 2009. (YPPI Appx. 107 ¶ 35). Fourth, YPPI alleged that the print ads published by Dex Media – previously introduced as evidence of the value of the Licensed Images – constituted infringement of YPPI's copyrights. (YPPI Appx. 110 ¶ 51).

Dex Media filed a Motion to Dismiss YPPI's Counterclaims and for Judgment on the Pleadings. (YPPI Appx. 406–510). In support of its Motion for Judgment on the Pleadings, Dex Media argued that YPPI's claims were barred by claim preclusion (*res judicata*), judicial estoppel, and collateral estoppel, and that YPPI had failed to state a claim upon which relief could be granted. (YPPI Appx. 412–15). On January 19, 2017, the Bankruptcy Court dismissed the Counterclaims and entered Judgment on the Pleadings on the grounds of claim preclusion, judicial estoppel, and collateral estoppel. *In re Dex Media, Inc.* (*Dex Media I*), 564 B.R. 208, 214–16 (Bankr. D. Del. 2017).

Next, arguing that the Bankruptcy Court's Judgment on the Pleadings did not conform to Rule 58(a) of the Federal Rules of Civil Procedure, Dex Media filed a Certification of Counsel with a proposed form of Declaratory Judgment. (Adv. D.I. 49). YPPI opposed entry of the Declaratory Judgment, claiming that Dex Media's request was a gambit to extend the window to file a motion for attorneys' fees. (Adv. D.I. 52 ¶¶ 1–3). On March 8, 2017, the Bankruptcy Court entered the Declaratory Judgment. (Adv. D.I. 55).

On March 23, 2017, Dex Media filed an Amended Motion for Attorneys' Fees and Costs under Section 505 of the Copyright Act. (Adv. D.I. 64). YPPI opposed the motion. (Adv. D.I. 91). On January 30, 2018, the Bankruptcy Court awarded Dex Media $504,025.50 in fees and

$2,522.45 in costs, a reduction of about 33% of the legal expenses Dex Media incurred in defending against YPPI's claims.  (Adv. D.I. 104 at 11).

### D.     Appeal of the Bankruptcy Court Decision[2]

YPPI appealed the Bankruptcy Court's entries of Judgment on the Pleadings and Declaratory Judgment (collectively, "the Judgments") and grant of the Fee Award.  This Court had jurisdiction to hear the appeals and affirmed the Bankruptcy Court's Decision in a Memorandum Opinion on November 28, 2018.  (D.I. 22); *Dex Media II*, 595 B.R. 19.

#### 1.     Judgment on the Pleadings

##### a.     Claim Preclusion (*Res Judicata*)

The Bankruptcy Court held that claim preclusion barred YPPI's Counterclaims because these claims were "similar if not identical" to those it raised in the SuperMedia Litigation, and both actions involved "the same parties, the same Licensed Images, the same copyrights, the same chain of events, and the same course of dealing."  *Dex Media I*, 564 B.R. at 214–15.

On appeal, YPPI argued that, under the Third Circuit "bright line rule," "*res judicata* does not bar claims predicated on events that postdate the filing of the initial lawsuit."  (D.I. 12 at 23–24, citing *Morgan v. Covington Twp*, 648 F.3d 172, 177–78 (3d Cir. 2011)).  Thus, YPPI argued, the Bankruptcy Court erred in dismissing the claims that Dex Media infringed YPPI's copyrights after YPPI sued SuperMedia.  (D.I. 12 at 23–24).  This Court disagreed and affirmed the Bankruptcy Court because the Counterclaims were premised on an event that preceded YPPI's

---

[2]     The appeals, captioned *In re Dex Media, Inc.*, are docketed as follows: Judgment on the Pleadings at C.A. No. 17-96-MN (D. Del.); Declaratory Judgment at C.A. No. 17-265-MN; and Fee Award at C.A. No. 18-197-MN (D. Del).  The appeals are consolidated under the lead case C.A. No. 17-265-MN.

Complaint against SuperMedia – namely, Idearc's alleged failure to assume the License in 2009. *Dex Media II*, 595 B.R. at 33.

YPPI also argued that its claims in both the SuperMedia and Dex Media Litigations were distinct. It characterized its previous claims as against SuperMedia's transfer of Licensed Images, whereas the present Counterclaims alleged liability for Dex Media's publication of the Licensed Images. (D.I. 12 at 29–30). This Court was not persuaded by YPPI's "attempts to downplay the essential similarity of the underlying events" in both lawsuits. *Dex Media II*, 595 B.R. at 35.

Finally, YPPI argued that the Bankruptcy Court erred in concluding that Dex Media and SuperMedia were privies in its analysis of claim preclusion. (D.I. 12 at 26–28). Dex Media had argued before the Bankruptcy Court in its Motion for Judgment on the Pleadings, however, that Dex Media and SuperMedia were privies. (Adv. D.I. 31 at 15–16). YPPI had not disputed this issue at any point before the Bankruptcy Court, and thus this argument was waived. *Dex Media II*, 595 B.R. at 35.

Though affirmance of claim preclusion was a sufficient ground to hold that the Motion for Judgment on the Pleadings was properly granted, in the interest of efficiency, this Court addressed the alternative bases for the Bankruptcy Court's ruling. *Id.* at 36.

### b.    Judicial Estoppel

The Bankruptcy Court applied the equitable doctrine of judicial estoppel to bar YPPI's Counterclaims because allowing YPPI to take inconsistent positions would provide it an improper advantage. *Dex Media I*, 564 B.R. at 215.

On appeal, YPPI argued that its previous theory that the License was valid was not inconsistent because its current "failure to assume" theory did not expressly posit that the License was invalid. (D.I. 12 at 37). This Court agreed with Dex Media's opposition that "this is a semantic distinction without a substantive difference." (D.I. 19 at 35); *Dex Media II*, 595 B.R. at

37.  Similarly, YPPI argued that its use of Dex Media's print ads was not inconsistent because YPPI had not taken a position on whether the ads were infringing.  (D.I. 12 at 38).  On the contrary, YPPI's principal Trent Moore and YPPI's counsel did not simply ignore the issue of whether the ads were infringing; they affirmatively conceded that the ads did not infringe.  *See Dex Media II*, 595 B.R. at 38 n.5.

YPPI also argued that the Bankruptcy Court abused its discretion because it had based the application of judicial estoppel solely on YPPI's inconsistent positions and did not make a finding of bad faith.  (D.I. 12 at 39–40).  This Court disagreed because the record below provided ample support for the Bankruptcy Court to apply judicial estoppel.  *Dex Media II*, 595 B.R. at 39.  YPPI's inconsistent arguments amounted to the exact "kind of tactical decision making" that judicial estoppel was designed to prevent.  *Id.* (citing *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 100 (3d Cir. 1999)).

Finally, YPPI argued that judicial estoppel was inappropriate because the Bankruptcy Court had not accepted YPPI's previous positions in the SuperMedia Litigation.  (D.I. 12 at 41–44, citing *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)).  On the contrary, the Bankruptcy Court had accepted all YPPI's positions in the SuperMedia Litigation.  *See Dex Media II*, 595 B.R. at 39.

### c.    Collateral Estoppel

The Bankruptcy Court held that collateral estoppel barred the Dex Media Litigation because YPPI's Counterclaims depended on two previously decided issues: whether the License was an executory contract at the time of the Idearc Bankruptcy, and whether SuperMedia had transferred Licensed Images to Dex Media in violation of the License.  *Dex Media I*, 564 B.R. at 216.  The Bankruptcy Court decided both issues against YPPI in the SuperMedia Litigation.  *Id.*

YPPI argued on appeal that, although the Bankruptcy Court decided in 2013 that the License was not an executory contract during the Idearc Bankruptcy, the Bankruptcy Court had changed its analysis in 2015 and 2016 and ruled that the License was executory.  (D.I. 12 at 45–47).  This Court rejected YPPI's characterization of the Bankruptcy Court's new "rulings."  *Dex Media II*, 595 B.R. at 40–41.  In bankruptcy, Idearc had listed all its contracts as executory for the sake of administrative convenience, which caused the Bankruptcy Court to refer to YPPI as an "executory contract claimant."  (D.I. 19 at 45).  The Bankruptcy Court found that the License was not executory when denying both YPPI's Motion to Compel Assumption or Rejection of Executory Contract and YPPI's Motion for Reconsideration of the same.  (DEX 23; DEX 40–41).

YPPI also argued that collateral estoppel, based on the finding that SuperMedia had not transferred Licensed Images to Dex Media, was improper because the Bankruptcy Court had contradicted this finding.  (D.I. 12 at 47–48).  Again, YPPI's argument mischaracterized the Bankruptcy Court's statements.  The Bankruptcy Court held three times that there was no evidence of a physical transfer from SuperMedia to Dex Media.  (DEX 14; DEX 224–25); *Dex Media I*, 564 B.R. at 216.

## 2. Declaratory Judgment

YPPI argued on appeal that the Declaratory Judgment was inappropriate and unnecessary because the Bankruptcy Court's Opinion and Order fully complied with Rule 58(a) of the Federal Rules of Civil Procedure.  (D.I. 12 at 49).  This Court disagreed because the Bankruptcy Court's Order did not set forth the relief to which Dex Media was entitled, as required by Rule 58(a).  *Dex Media II*, 595 B.R. at 42.  Further, even if the Declaratory Judgment was not necessary for the Bankruptcy Court to comply with Rule 58(a), the Bankruptcy Court's entry of an additional document to clarify its decision did not constitute reversible error.  *Id.* at 43.

YPPI also argued that the Declaratory Judgment did not accurately reflect the Bankruptcy Court's rulings because the Declaratory Judgment stated that Dex Media had not infringed YPPI's copyrights, whereas the Opinion merely precluded YPPI from pursuing this copyright infringement claim. (D.I. 12 at 53–54). This Court found nothing inconsistent about the Bankruptcy Court's finding of non-infringement and preclusion of future infringement claims. *Dex Media II*, 595 B.R. at 43.

Finally, YPPI argued on appeal that Dex Media filed the proposed Declaratory Judgment as a ploy to extend its deadline for filing a motion for attorneys' fees. (D.I. 12 at 50–51, citing FED. R. CIV. P. 54(d)(2)(B)(i) (stating that, absent a contrary statute or court order, a motion for attorneys' fees must "be filed no later than 14 days after the entry of judgment")). This Court disagreed that the proposed Declaratory Judgment constituted gamesmanship because the Bankruptcy Court's Order was not final under Rule 58(a) and thus did not trigger the 14-day deadline for Dex Media's motion for attorneys' fees. *Dex Media II*, 595 B.R. at 44.

### 3. Fee Award[3]

#### a. Objective Unreasonableness

The Bankruptcy Court was "convinced beyond near certainty that YPPI's lawsuit against Dex Media was a situation of 'objective unreasonableness'" and thus warranted an award of attorneys' fees and costs to Dex Media ("the Fee Award"). (Adv. D.I. 104 at 4). YPPI argued that this was clear error. (Fee App. D.I. 16 at 22–26). YPPI admitted that it had changed positions between the SuperMedia and Dex Media Litigations, but claimed these changes were made in reliance on the Bankruptcy Court's previous rulings. (Fee App. D.I. 16 at 9, 23). This Court,

---

[3]     The docket for YPPI's appeal of the Fee Award, captioned *In re Dex Media, Inc.*, C.A. No. 18-197-MN (D. Del.), is cited herein as "Fee App. D.I. __."

however, noted that YPPI knew before the conclusion of the SuperMedia Litigation the factual bases for the contrary positions it later took in the Dex Media Litigation. *Dex Media II*, 595 B.R. at 46. YPPI's change in positions was an objectively unreasonable "flip-flop." *Id.*

YPPI also argued that its Counterclaims against Dex Media were not objectively unreasonable based on the Third Circuit "bright line rule" on *res judicata*. (Fee App. D.I. 16 at 23). The Court rejected this argument because YPPI not only could have claimed, but did claim, during the SuperMedia Litigation acts of infringement that postdated the start of that litigation. *Dex Media II*, 595 B.R. at 47. To wit, under YPPI's "failure to assume" theory, which it maintained for about a month during the SuperMedia Litigation, SuperMedia would have been liable for unauthorized transfers "at any point in time" after Idearc failed to assume the License in 2009. (DEX 316 ¶ 26).

### b.     Deterrence

The Bankruptcy Court considered the Fee Award necessary to deter YPPI from further litigation because it had become "clear that YPPI is now in the business of litigation." (Adv. D.I. 104 at 7). The Bankruptcy Court observed that YPPI "has no income from the sale of its photographs, but has brought suit against SuperMedia, Dex Media, Tata, Inc., and others." (*Id.*). Indeed, just weeks after the SuperMedia litigation concluded, YPPI sued Dex Media in the Middle District of Florida, asserting inconsistent positions. (*Id.* at 4–5).

YPPI argued on appeal that "[n]o evidence supports a finding that YPPI needs to be deterred from filing frivolous cases," and that "[t]he only case YPPI has ever lost is the case below (which is on appeal)." (Fee App. D.I. 16 at 26–27). The Bankruptcy Court, however, had presided over both the SuperMedia Litigation and Dex Media Litigation for four years and was uniquely situated to determine whether deterrence was necessary. *Dex Media II*, 595 B.R. at 48. This Court

found no clear error, and thus no abuse of discretion, in the Bankruptcy Court's decision regarding deterrence.  *Id.*

### c.      Financial Ruin

YPPI argued that the Bankruptcy Court's disregard of YPPI's claimed inability to pay rendered the Fee Award clearly erroneous.  (Fee App. D.I. 16 at 27–30).  Essentially, YPPI argued that, given its poor financial situation, any fee award would be impermissible, no matter how weak or objectively unreasonable its claims.  *Dex Media II*, 595 B.R. at 48.  This Court rejected this misstatement of law.  *Id.*

This Court also rejected YPPI's claim that the Bankruptcy Court ignored YPPI's "uncontested" evidence of impoverishment.  *Id.*  YPPI's evidence was, in fact, heavily contested, and the Bankruptcy Court properly relied on record evidence in order to set a Fee Award that would not result in financial ruination.  *Id.* at 48–49.

YPPI also argued that the Fee Award was unwarranted because Dex Media claimed but did not prove that YPPI had received millions in settlements and judgments of copyright claims.  (Fee App. D.I. 29 at 8–9).  Notwithstanding these outstanding sums, YPPI failed to provide legal authority establishing that "cash on hand" set a limit for fees and costs, and thus the Court declined to disturb the Fee Award.  *Dex Media*, 595 B.R. at 49.

### d.      Forum Rate Exceptions

On appeal, YPPI argued that the Bankruptcy Court erred in applying the billing rate of Dex Media's New York counsel, when the Dex Media litigation occurred in Delaware.  (Fee App. D.I. 16 at 30–34).  The Bankruptcy Court's Memorandum Opinion acknowledged this "forum rate rule," but nonetheless applied an exception because Dex Media required the "knowledge and expertise" of its New York counsel, which had also represented Dex Media in the SuperMedia

Litigation.  (Adv. D.I. 104 at 6–7).  YPPI's appeal offered no legal or factual basis to show that the Bankruptcy Court erred in applying this exception.  *Dex Media II*, 595 B.R. at 49–50.

### e.      Calculation of Reasonable Hours

The Bankruptcy Court calculated the Fee Award by conducting a "line by line" review of the attorney's time records, reducing time to account for counsels' prior knowledge of the SuperMedia Litigation.  (Adv. D.I. 104 at 8).  The Bankruptcy Court also deducted fees attributed to litigation in Florida.  (*Id.* at 7–8).  Accordingly, the Bankruptcy Court reduced the attorney fee request by $264,973.  (*Id.* at 8).  YPPI did not provide any authority or persuasive arguments that the Bankruptcy Court's thorough analysis was deficient.  *Dex Media II*, 595 B.R. at 51.

### f.      Travel Time and Costs

Finally, YPPI argued that the Bankruptcy Court clearly erred in awarding fees and costs associated with Dex Media counsel's travel from New York to Delaware.  (Fee App. D.I. 16 at 38).  The record shows that counsel only charged for travel if the attorneys were working on the Dex Media Litigation in transit.  *Dex Media II*, 595 B.R. at 51.  YPPI provided no basis to challenge the Bankruptcy Court's award of travel time and costs.  *Id.*

On December 20, 2018, YPPI filed its Notice of Appeal to the U.S. Court of Appeals for the Third Circuit.  (D.I. 25).  YPPI intends to appeal this Court's affirmance of the Bankruptcy Court's entry of Judgment on the Pleadings, entry of Declaratory Judgment, and grant of Fee Award.  (*Id.*).

### E.      Dex Media's Motion for Attorneys' Fees and Costs

On January 4, 2019, Dex Media filed a Motion for Attorneys' Fees and Costs under Section 505 of the Copyright Act, for fees and costs incurred in defending against YPPI's appeal of the Bankruptcy Court's Judgments and Fee Award.  (D.I. 29).  Dex Media argued that YPPI's positions on appeal were objectively unreasonable, and that fee shifting was necessary to deter

YPPI's baseless appeals and preserve Dex Media's Fee Award.  (*Id.* at 11–18).  Dex Media requested $301,357.70 in legal fees and $8,753.27 in legal costs billed by two law firms that worked on the appeal:  Latham & Watkins LLP ("L&W"), which served as Dex Media's primary litigation counsel, and Drinker Biddle & Reath LLP ("DB&R"), which served as local and bankruptcy counsel.  (D.I. 29, Ex. B; D.I. 29, Ex. C).

## II.   DISCUSSION

### A.   Entitlement to Attorneys' Fees and Costs

#### 1.   Legal Standard

A district court may award costs, including a reasonable attorney's fee, to the prevailing party in a civil action under the Copyright Act.  17 U.S.C. § 505.  The district court enjoys broad discretion in awarding fees and costs to the prevailing party, but may not grant the award as a matter of right.  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994).  When deciding the award of attorneys' fees and costs, the court may consider factors including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.* at 534 n.19 (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)).  Thus, a court may award fees even if the losing party's arguments were not objectively unreasonable, and, conversely, may deny fees even if the arguments were objectively unreasonable.  Courts have also held that § 505 authorizes granting fees and costs to a party succeeding on appeal.  *See Mahan v. Roc Nation, LLC*, 634 F. App'x 329, 331 (2d Cir. 2016); *JCW Inv., Inc. v. Novelty, Inc.*, 509 F.3d 339, 341 (7th Cir. 2007); *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 578 (5th Cir. 2003); *TCA Television Corp. v. McCollum*, No. 15 Civ. 4325 (GBD) (JCF), 2017 WL 2418751, at *16 (S.D.N.Y. June 5, 2017), *adopted by* No. 15 Civ. 4325 (GBD) (JCF), 2018 WL 2932734, slip op. (S.D.N.Y. June 12, 2018).

## 2.    Discussion

### a.    Objective Unreasonableness

Dex Media argues that the Court should grant its Motion for Attorneys' Fees and Costs because YPPI's arguments on appeal were objectively unreasonable.  (D.I. 29 at 11–15).  For example, YPPI appealed the Bankruptcy Court's Judgment on the Pleadings on all three independent and distinct grounds: claim preclusion, judicial estoppel, and collateral estoppel. YPPI also claimed that its inconsistent positions were based on changes in the Bankruptcy Court's analyses.  (D.I. 29 at 12–13).  Thus, to prevail on its appeal of the Judgment on the Pleadings, YPPI would have to convince this Court that the Bankruptcy Court misunderstood its own rulings, then misapplied them in each of three independent grounds for dismissing the Counterclaims.  Dex Media also notes that the Bankruptcy Court was uniquely familiar with the claims in both the SuperMedia Litigation and the Dex Media Litigation to make an informed determination of estoppel.  (D.I. 29 at 11–12).  The Bankruptcy Court's years of experience with the two proceedings showed "beyond near certainty" that the Dex Media Litigation was "a situation of objective unreasonableness."  (Adv. D.I. 104 at 37).

This Court agrees that YPPI's arguments on appeal were objectively unreasonable.  Several of its positions mischaracterized the record and the Bankruptcy Court's rulings.  For example, YPPI's argument against claim preclusion "attempt[ed] to downplay essential similarity" between the SuperMedia Litigation and the Dex Media Litigation.  *Dex Media II*, 595 B.R. at 35.  YPPI also misrepresented that the Bankruptcy Court did not accept any of its positions in the SuperMedia Litigation, a requisite for judicial estoppel of the Dex Media Litigation.  *Id.* at 39.  Arguing against collateral estoppel, YPPI claimed that the Bankruptcy Court had ruled that the License was an "executory contract" and that SuperMedia had "transferred" images to Dex Media, when, in fact, the Bankruptcy Court had only used those terms as informal descriptions.  *Id.* at 40–41.

Elsewhere, YPPI's appeal failed to provide legal authority to show why reversal was necessary.  For example, YPPI argued that the Bankruptcy Court's Declaratory Judgment was unnecessary, but it did not establish that entering the judgment was reversible error.  *Id.* at 43.  It also challenged the Bankruptcy Court's Fee Award by arguing, *inter alia*, that it was clear error to find the litigation objectively unreasonable, find a need for deterrence, and grant an award that ostensibly would impoverish YPPI.  (Fee App. D.I. 16 at 20–30).  Given the broad discretion of a court awarding attorneys' fees and costs under § 505, YPPI needed to show forcefully why the Bankruptcy Court's decision was clearly erroneous.  Having failed to do so, for any of its positions on appeal, YPPI's arguments were objectively unreasonable.

YPPI argues that a finding of objective unreasonableness is unwarranted because Dex Media did not previously claim, and this Court did not previously find, YPPI's appeal to be objectively unreasonable.  (D.I. 30 at 5).  Dex Media did not need to argue – nor did this Court need to find expressly – that YPPI's appeal was objectively unreasonable.  Objective reasonableness of the appeal had no bearing on the merits of the Bankruptcy Court's decisions below.  Now that Dex Media has succeeded on appeal and seeks associated fees and costs, it has argued persuasively that YPPI's arguments on appeal were objectively unreasonable.

YPPI also faults Dex Media for relying on the Bankruptcy Court's finding of objective unreasonableness, which already resulted in the Fee Award below and should not be bootstrapped into the analysis for this Motion for Attorneys' Fees and Costs.  (D.I. 30 at 5).  To assess the objective reasonableness of the appeal, this Court did not simply adopt the Bankruptcy Court's findings below.  Because YPPI's new arguments on appeal simply double down on its positions in the Dex Media Litigation, however, this Court is persuaded by the Bankruptcy Court's forceful and informed finding of objective unreasonableness.  *See Kirtsaeng v. John Wiley & Sons, Inc.*,

136 S. Ct. 1979, 1987 (2016) ("A [trial] court that has ruled on the merits of a copyright case can easily assess whether the losing party advanced an unreasonable claim or defense.").

### b.  Deterrence

Dex Media also argues that the Court should award fees and costs to deter future litigation of these claims.  A court may grant fees and costs to a prevailing party to deter "overaggressive assertions of copyright claims."  *Kirtsaeng*, 136 S. Ct. at 1989.  Deterrence may be appropriate when a party has "litigated [its] claims *ad nauseum*" and has given "strong indication that [it] will continue to litigate these issues with disregard to previous judicial rulings."  *Steinbeck v. Kaffaga*, No. CV 14-08681 TJH (JCx), 2016 WL 6025493, at *1 (C.D. Cal. Feb. 18, 2016).

Here, a grant of fees and costs is appropriate to deter YPPI from further litigation.  YPPI has shown that it is "in the business of litigation."  (Adv. D.I. 104 at 7).  Less than one month after the Bankruptcy Court issued its final decision in the SuperMedia Litigation, YPPI began the Dex Media Litigation.  The Dex Media Litigation was premised on the same issues and claims as the preceding litigation, as the Bankruptcy Court found when applying claim preclusion, judicial estoppel, and collateral estoppel.  *Dex Media I*, 564 B.R. at 33–41.  Then, rather than judiciously raise its strongest arguments, YPPI appealed the Bankruptcy Court's decision on all three grounds for the Judgment on the Pleadings, the Declaratory Judgment, and the entitlement to and calculation of the Fee Award.  After this Court affirmed the Bankruptcy Court's decision in full, YPPI filed a Notice of Appeal to the Third Circuit, showing its intention to challenge this Court's affirmance.  (D.I. 25).

And YPPI has not stopped there.  On July 30, 2018, YPPI filed yet another lawsuit against Dex Media in the Middle District of Florida, claiming Dex Media violated the Digital Millennium Copyright Act ("DMCA").  (D.I. 29, Ex. A).  Both the Dex Media Litigation, with its string of appeals, and the new DMCA action show a need to deter YPPI from relitigating its claims.

17

The Court is not swayed by YPPI's plea that "[l]osing one case does not create a need for deterrence." (D.I. 30 at 6). The need for deterrence is not based on YPPI's loss in the Dex Media Litigation. *See Kirtsaeng*, 139 S. Ct. at 1989 (explaining that deterrence may be necessary to deter repeated assertion of copyright claims, "even if the losing position was reasonable"). It is based on "YPPI's harassment" of Dex Media, (Adv. D.I. 104 at 4), and disregard for judicial resources and decision-making.

YPPI also attempts to distinguish the new DMCA action as "not a copyright infringement claim" and thus a break in the pattern of past litigation. (D.I. 30 at 6). This attempt to distinguish copyright infringement from a Digital Millennium Copyright Act violation is semantic hair-splitting and misses the point of deterrence. YPPI has created a need for deterrence by repeatedly making claims based on the same License with SuperMedia and its privies and arguing different permutations of facts and claims in several actions and several fora over several years in hopes of getting another bite at the apple.

### c.    Compensation

It is also appropriate to award fees and costs to Dex Media as compensation for its efforts in defending the Bankruptcy Court's decision on appeal. The availability of compensation to a "clearly correct" party provides "an incentive to litigate the case all the way to the end," thereby serving the goals of the Copyright Act and strengthening the body of copyright law. *Kirtsaeng*, 139 S. Ct. at 1986. This incentive would be destroyed if the losing party could simply appeal on frivolous or unreasonable grounds and force the prevailing party to assume the costs of defending against appeal. *See Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 561 (9th Cir. 1996) ("[F]ees are warranted under § 505 inasmuch as it served the purposes of the Copyright Act for [defendant] to defend an appeal so that the district court's fee award would not be taken away from him."). Dex

Media won a Fee Award of $506,547.95 below, (Adv. D.I. 104 at 11), and has spent nearly two-thirds this amount to defend against YPPI's appeal, (D.I. 29 at 18).  Dex Media should be able to recoup the expense incurred from fighting an unreasonable appeal.

### B.      Calculation of Reasonable Attorneys' Fees and Costs

Having determined that granting fees and costs to Dex Media is appropriate, the Court must determine what award would be reasonable.

#### 1.      Legal Standard

The starting point for calculating reasonable attorneys' fees is the lodestar figure, equivalent to the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *Princeton Dig. Image Corp. v. Office Depot Inc.*, C.A. No. 13-408, 2017 WL 446122, at *3 (D. Del. Jan. 27, 2017) (citing *Student Pub. Interest Research Grp. v. AT&T Bell Labs.*, 842 F.2d 1436, 1441 (3d Cir. 1988)).  In most cases, a reasonable rate is the prevailing rate in the forum of litigation.  *Interfaith Cmty. Org. v. Honeywell Intern., Inc.*, 426 F.3d 694, 705 (3d Cir. 2005).  This forum rate rule yields to two exceptions: when the need for "special expertise of counsel from a distant district" is shown, and when local counsel is unwilling to handle the case. *Id.*  To arrive at a reasonable number of hours, the court must deduct any "excessive, redundant, or otherwise unnecessary" hours billed.  *Am. Bd. Internal Med. v. Von Muller*, 540 F. App'x 103, 107 (3d Cir. 2013) (quoting *Evans v. Port Auth.*, 273 F.3d 346, 362 (3d Cir. 2001)).  The court can undertake an "hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut."  *Am. Bd. Internal Med.*, 540 F. App'x at 107.  The party advocating for an adjustment to the lodestar calculation bears the burden of proving an adjustment is needed.  *Princeton Dig. Image Corp.*, 2017 WL 446122, at *3.

### 2.      Discussion

Dex Media retained DB&R to serve as its local and bankruptcy counsel and L&W to serve as its primary litigation counsel.  (D.I. 29 at 18–19).  L&W counsel for Dex Media was based in New York and included three attorneys, Eric F. Leon, Kuan Huang, and Nathan Taylor, who also represented Dex Media in the adversarial proceeding against YPPI in Bankruptcy Court.  (*Id.* at 20).  The DB&R team was based in Delaware and led by attorney Patrick Jackson, who also represented Dex Media before the Bankruptcy Court.  (*Id.*).  Dex Media has incurred $301,357.70 in legal fees and $8,753.27 in legal costs from these firms in litigating the appeal.  (*Id.* at 19).

### a.      Reasonable Rates

Dex Media argues that the rates charged by its counsel are reasonable rates for calculating the attorneys' fee award because the Bankruptcy Court previously determined that the rate charged by L&W was reasonable when calculating the Fee Award.  (*Id.* at 20).  It maintains, as the Bankruptcy Court decided below, that L&W's familiarity with the SuperMedia Litigation constitutes special expertise that warrants an exception to the forum rate rule.  (*Id.*).  Meanwhile, YPPI argues that the fee for non-local counsel should be calculated using the Delaware rate because Dex Media's local counsel was equally familiar with the SuperMedia Litigation and able to address the issues of *res judicata*, judicial estoppel, and collateral estoppel.  (D.I. 30 at 9).

This Court agrees with the Bankruptcy Court that non-local counsel's knowledge of the proceedings was necessary to Dex Media's success against YPPI, meriting an exception to the forum rate rule.  This is especially the case because YPPI's arguments on appeal often distorted the record and rulings in previous litigation.  Counsel that had not been involved in the extensive SuperMedia and Dex Media Litigations would have been ill-equipped to recognize these weaknesses.

YPPI argues that two L&W attorneys, Megan A. Behrman and Ryan Jones, did not work on the SuperMedia Litigation, and thus did not have the special expertise needed to warrant an exception to the forum rate rule.[4]  YPPI advocates striking the hours worked by Behrman and Jones from the fee calculation.  (*Id.* at 10).  Alternatively, YPPI argues that the rates for Behrman and Jones should be the comparable rate in the forum: $325 and $350 per hour, respectively.  (*Id.* at 10–11).  Because Behrman and Jones did not themselves work on the previous litigation – although their proximity and access to Leon, Huang, and Taylor may have conferred expertise on the previous litigation – the Court will decline to extend the forum rate rule exceptions to them. The Court will apply the forum rate rule to Behrman and Jones, setting their rates at $325 and $350.

YPPI did not challenge the rates charged by local counsel.  Thus, the reasonable rates for calculating attorneys' fees will be the rates at which Dex Media hired its counsel.  *See Dow Chem. Can. Inc. v. HRD Corp.*, 2013 WL 3942052, at *2 (D. Del. July 29, 2013) (considering a party's payment of attorneys' fees as evidence of reasonableness).  Based on this analysis, the reasonable rates for the services of L&W and DB&R are as follows:

|     |             | Appeal from Judgments (/hr) | Appeal from Fee Award (/hr) |
| --- | ----------- | --------------------------- | --------------------------- |
| L&W | E. Leon     | $1,195                      | $1,120                      |
|     | K. Huang    | $895                        | $975                        |
|     | N. Taylor   | $725                        | $825                        |
|     | M. Behrman  | $325                        |                             |
|     | R. Jones    |                             | $350                        |
|     | S. Cole     | $400                        |                             |
|     | L. Haller   |                             | $330                        |
|     | J. Meyer    |                             | $380                        |

---

[4]     YPPI does not address the rates or hours of three L&W timekeepers, identified as S. J. Cole, L. F. Haller, and J. C. Meyer.  Because YPPI does not propose alternative rates for these individuals, the Court will use the rates as charged.

|  |  | Appeal from Judgments (/hr) | Appeal from Fee Award (/hr) |
| --- | --- | --- | --- |
| DB&R | P. Jackson | $515 | $605 |
|  | T. Stoner | $340 |  |
|  | C. Greer |  | $335 |

(D.I. 29, Ex. B-1; D.I. 29, Ex. B-2; D.I. 29, Ex. C-1).

### b.    Reasonable Hours

Dex Media argues that its counsel worked a reasonable number of hours on the appeal because YPPI's appeal was large in scope and number of arguments.  (D.I. 29 at 19).  YPPI appealed three separate decisions of the Bankruptcy Court: the Judgment on the Pleadings, the Declaratory Judgment, and the Fee Award.  YPPI raised multiple arguments to challenge each decision on appeal.  For example, YPPI challenged each independent finding of preclusion in support of Judgment on the Pleadings.  Likewise, it appealed both Dex Media's entitlement to the Fee Award and the reasonableness of the Bankruptcy Court's calculation.

YPPI argues that the number of hours billed by Dex Media counsel is "extraordinary and unreasonable" and should be modified.  (D.I. 30 at 11).  For example, YPPI asserts that 224.6 hours is an excessive amount of time for the Dex Media attorneys to have spent on the appeal of the Judgments.  YPPI suggests striking Behrman's 43 hours and capping the remaining time, arbitrarily, at 100 hours because of the attorneys' prior familiarity. (*Id.* at 12–13). L&W attorneys spent 132.8 hours defending against the appeal of the Fee Award; YPPI suggests reducing this time by cutting Jones's 61 hours. (*Id.* at 14–15).  YPPI also suggests that the Court deduct hours for "duplicative work," indicated by multiple attorneys drafting and revising outlines and briefs, and researching the same issues. (*Id.* at 14, 15–16; D.I. 30, Ex. C; D.I. 30, Ex. D).  YPPI also argues that 2.3 hours spent preparing materials for an audit should not count toward the calculation of attorneys' fees for the appeal.  (D.I. 30 at 18).

Although YPPI's arguments on appeal were indeed exhaustive and extensive, Dex Media counsel's familiarity with the issues warrants a reduction in the hours billed.  To do so, the Court inspected all time entries adduced by Dex Media in support of its Motion for Attorneys' Fees and Costs.  The Court organized the tasks into six categories: (1) reviewing litigation background materials; (2) conducting legal research; (3) corresponding and discussing the appeal; (4) drafting and revising outlines and briefs; (5) administrative work; and (6) unrelated work, such as for audit.  Because counsel block-billed time – *i.e.*, listed in a single entry all work done in a period of time – the Court estimated how much time was spent on each type of task in a given time entry, based on descriptions of the work.

The Court agrees with YPPI that counsel's prior familiarity should have saved some time otherwise spent reviewing and researching.  Further, the Court agrees with YPPI that work on the audit did not yield "work product that was actually utilized in the instant litigation" and thus should not count against YPPI.  *See Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3d Cir. 1993).  The Court does not, however, credit YPPI's argument that multiple lawyers doing similar tasks indicates redundancy.  Applying these principles, the Court will discount all hours in the first, second, and sixth categories of work tasks.  Thus, only hours attributable to (3) corresponding and discussing the appeal, (4) drafting and revising outlines and briefs, and (5) administrative work will count toward the fee calculation.

As to fees charged by Dex Media's local counsel, YPPI challenges the recovery wholesale.  (D.I. 30 at 17–18).  YPPI relies on *Interfaith Community Organization v. Honeywell International, Inc.*, which states that, "under normal circumstances, a party that hires counsel from outside the forum of litigation may not be compensated for travel time, travel costs, or the ***costs*** of local counsel."  426 F.3d at 710 (emphasis added).  YPPI misreads this case.  First, nowhere does

*Interfaith* say that "local counsel *fees* are not compensable," as YPPI argues.  (D.I. 30 at 18 (emphasis added)).  Second, the court in *Interfaith* applied an exception to the forum rate rule because the appellee had demonstrated that local counsel was unwilling to represent the appellee. *Interfaith Cmty. Org.*, 426 F.3d at 710.

Here, the Court has applied the special expertise exception to the forum rate rule. (*See supra* Section II.B.2.a.).  It is also clear from DB&R's timekeeping entries that local counsel worked substantively on the appeals and were not only necessary because Dex Media required local counsel to handle filings.   Indeed, YPPI contradicts itself by arguing that DB&R's substantive legal work should not count toward attorneys' fees, while arguing elsewhere in its opposition that the forum rate should apply because DB&R was equipped to do the work done by L&W.  (D.I. 30 at 9 ("No exceptions to the forum rate rule apply here. . . .  Dex Media's local Delaware counsel was certainly qualified to address the issues of *res judicata*, judicial estoppel, and collateral estoppel.")).  Thus, the calculation of attorney fees will include fees charged by DB&R.

Applying these principles, the reasonable hours spent by Dex Media counsel on the appeal are as follows:

|  |  | Appeal from Judgments (hr) | Appeal from Fee Award (hr) |
|---|---|---|---|
| L&W | E. Leon | 21.7 | 23.0 |
|  | K. Huang | 62.6 | 7.8 |
|  | N. Taylor | 65.8 | 22.4 |
|  | M. Behrman | 23.7 |  |
|  | R. Jones |  | 42.4 |
|  | S. Cole | 15.5 |  |
|  | L. Haller |  | 4.1 |
|  | J. Meyer |  | 0.1 |
| DB&R | P. Jackson | 4.1 | 11.8 |
|  | T. Stoner | 2.9 |  |
|  | C. Greer |  | 3.2 |

(D.I. 29, Ex. B-1; D.I. 29, Ex. B-2; D.I. 29, Ex. C-1).

### c.     Lodestar Calculation

The reasonable attorneys' fee is calculated as the reasonable rate over the reasonable hours expended.  The Court will also apply a 10% discount to the fees attributed to L&W, as the firm provided the same concession to its client Dex Media.  Applying these calculations, Dex Media is entitled to **$204,477.30** in attorneys' fees, with $193,168.80 attributed to L&W and $11,308.50 to DB&R.

### d.     Compensable Costs

Dex Media has requested $8,753.27 in costs associated with defending against the appeal. (D.I. 29 at 18–19).  Of this sum, $8,332.59 was incurred by L&W for legal research ($8,305.20) and document preparation ($27.39) (*Id.* at 19; D.I. 29, Ex. B-1 at 8; D.I. 29, Ex. B-2 at 7).  DB&R billed the remaining $420.68 for photocopying and delivery services.  (D.I. 29 at 19; D.I. 29, Ex. C-1 at 5–6, 11, 13).

Local Rule 54.1(b) provides an exhaustive list of items taxable as costs.  D. DEL. LOC. R. 54.1(b).  However, other costs not explicitly listed may be allowed if "the party claiming such costs substantiates the claim by reference to a statute or binding court decision."  D. DEL. LOC. R. 54.1(b)(11).  YPPI argues that Rule 39(e) of the Federal Rules of Appellate Procedure does not provide recovery for legal costs.  (D.I. 30 at 19).  Meanwhile, Dex Media cites Third Circuit authority showing that research costs are compensable at the trial level.  (D.I. 33 at 9, quoting *League of Women Voters v. Pennsylvania*, CIVIL ACTION NO. 17-5137, 2018 WL 1787211, at *8 (E.D. Pa. Apr. 13, 2018)).  *See also Wehr v. Burroughs Corp.*, 619 F.2d 276, 285 (3d Cir. 1980) ("[W]e disagree with the [district] court's refusal to allow recovery for computer-aided legal research as a reasonable cost of litigation.").  The parties have expended a handful of sentences developing their arguments about legal research costs.  (D.I. 30 at 19; D.I. 33 at 9).

The Court is not persuaded that Rule 39(e) – which applies when a district court decides a remand from the appellate court – also applies here, where the district court is deciding an appeal from the bankruptcy court. Nor is the Court convinced that the case on which Dex Media relies, which allows recovery of legal research costs at the trial level, is generalizable to appellate practice. The Court, however, will not decide the issue of whether research costs are compensable to the party prevailing on appeal to the district court because the research in question was associated with the Bankruptcy Court Judgments and concerned the same arguments and issues developed below. Thus, for the same reason the Court declined to include research hours in the calculation of attorneys' fees, the Court will not count legal research toward reasonable costs.

YPPI also argues that DB&R's costs are not compensable because these costs were only necessitated by Dex Media's decision to hire non-local lead counsel. (D.I. 30 at 17–18, citing *Interfaith Cmty. Org.*, 426 F.3d at 710). For the reasons discussed above as to attorneys' fees, (*see supra* Section II.B.2.b.), DB&R's legal costs are also compensable.

Therefore, Dex Media is awarded **$448.07** in legal costs, which includes $27.39 incurred by L&W and $420.68 incurred by DB&R.

### e. Ability to Pay

To avoid exorbitant grants of attorneys' fees and costs, courts must consider the party's ability to pay when setting the final award. *Marino v. Usher*, 673 F. App'x 125, 131–32 (3d Cir. 2016). The grant of fees and costs should be governed by the aims of compensation and deterrence, "but not ruination." *Lieb*, 788 F.2d at 156.

YPPI argues that the Court must consider its "dire financial condition" when shaping the award of fees and costs. (D.I. 30 at 20). It asserts that, at the time of filing its response in opposition to Dex Media's Motion, YPPI had $63.51 cash in hand. (*Id.* at 19). In 2018, YPPI's income was $10,460.60. (*Id.* at 19–20). YPPI also owes $48,000 in legal fees. (*Id.* at 20).

Meanwhile, Dex Media earned over $1 billion in operating revenue in the first nine months of 2018. (*Id.*). YPPI claims that it "could pay, at most, a reasonable fee award of $100.00." (*Id.*).

YPPI has not shown its inability to pay to this Court's satisfaction. To support its claim of potential financial ruination, YPPI provided only the four-page declaration of its president and sole employee, Trent Moore. (D.I. 30, Ex. A). It provided no bank statements, tax returns, attorney bills, or any other documents to show its dire financial straits. The only financial documents before the Court on this Motion are YPPI bank statements provided by Dex Media. (D.I. 33-1 ¶ 3; D.I. 33-1, Ex. E). Because YPPI has failed to provide the Court the full picture of its claimed poverty, the Court declines to further adjust the award based on ability to pay. The award remains necessary to compensate Dex Media and to deter YPPI from pursuing related litigation in the future. Further, the award of $204,925.37 in total fees and costs constitutes a 34% reduction from the amount Dex Media requested in its Motion, which the Court considers a reasonable concession to YPPI's inability to pay.

## III.  <u>CONCLUSION</u>

For the foregoing reasons, Dex Media's Motion for Attorneys' Costs and Fees (D.I. 29) is GRANTED. Dex Media is awarded **$204,447.30** in attorneys' fees and **$448.07** in costs. An appropriate order will follow.